UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Ambassador Robert Martin,
Ingersoll Sui Juris,

Plaintiff,

vs.

State of Minnesota [Sued as a
Person], State of Maine [Sued
as a Person], State of New
Hampshire [Sued as a Person],
State of Vermont [Sued as a
Person], State of New York [Sued
as a Person], State of Massachusetts
[Sued as a Person], State of
Connecticut [Sued as a Person],
State of Rhode Island [Sued as a
Person], State of Delaware [Sued as
a Person], State of New Jersey [Sued
as a Person], State of Maryland [Sued
as a Person], State of Pennsylvania
[Sued as a Person], State of Michigan
[Sued as a Person], State of Wisconsin
[Sued as a Person], State of Kentucky
[Sued as a Person], State of Kansas
[Sued as a Person], State of California
[Sued as a Person], State of Illinois
[Sued as a Person], State of Iowa [Sued

as a Person], State of Missouri [Sued as a Person], State of Oregon [Sued as a Person], State of Ohio [Sued as a Person], Constitution of United States Amendment XI, Constitution of United States Amendment XIV, Constitution of United States Amendment XVI, Constitution of United States Amendment XVII,

                              Defendants.                    Civ. No. 05-1059 (JNE/RLE)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motions of the Defendant States of Kansas, Michigan, New Jersey, Ohio, and Oregon, to Dismiss, and upon the Motions of the Plaintiff "for Hearings on the Treaty of 1789 Constitution of the United States Amendment V," and "for Entry of Default Judgment against the State of Wisconsin."  A Hearing on the Motions was held on September 15, 2005, at which time, the Plaintiff appeared on his own behalf, and the Defendant States appeared by John S. Garry, Assistant Minnesota Attorney General.  For reasons which follow, we recommend that the Plaintiff's Complaint be dismissed with prejudice, as we are without subject matter jurisdiction

over his claims, and that his Motions for Entry of Default, and for the Conduct of a

Hearing, be denied.

## II. Factual and Procedural Background

In a fifty-nine (59) page Complaint, the Plaintiff awkwardly links legal jargon into

chains of meaningless prattle.  Not satisfied with terms which have a commonly known

meaning, the Plaintiff defines such terms unintelligibly, and employs capital, or small

case letters, to suggest substantive meaning, where none exists.  The end result is a

largely inscrutable collection of baseless, conclusory assertions.  One Court, which

examined an almost verbatim rendition of the same allegations, described it as "largely

incomprehensible," and went on to observe that, "[w]hen one happens upon the few

allegations in the [Complaint] that can be deciphered, they at once appear to lack any

factual or legal basis."   Irving v. State of West Virginia, 2005 WL 1639300 at *1

(S.D.W.V., July 11, 2005).[1]

_____

[1]Through the wonders of electronic filing, we have been able to review the contents
of the pleading the Court addressed in Irving v. State of West Virginia, 2005 WL
1639300 (S.D.W.V., July 11, 2005).  By comparison, the Plaintiff's Complaint, here,
through its first thirty-four (34) pages is, substantively, a verbatim copy of the pleading
in Irving, inclusive of the same type of font, pagination style, paragraph headings, and
clumsy use of legal arcane.  Indeed, the claimant in Irving designated himself as an
"Ambassador,"  and employed the same punctuation, in the styling of his name, as the
(continued...)

As best as our close reading discloses, the Plaintiff appears to argue that the State of Ohio was illegally admitted to the Union, as disclosed by a Resolution of Congress which was promulgated in 1953, and which retroactively admitted Ohio as a State.   Given this premise, the Plaintiff argues that the Eleventh, Fourteenth, Sixteenth, and Seventeenth Amendments to the United States Constitution, were not properly ratified, and therefore, have no force or effect and should be held to be "unconstitutional."   Similarly, the Plaintiff hypothesizes that all laws passed by Congress after September 24, 1862, should be declared moot; that the President

---

[1](...continued)
Plaintiff employs here -- with a comma following his middle name.  Plainly, this is the sort of "canned" pleading that either can be purchased for a fee, or obtained freely from persons sharing like views.  See, e.g, United States v. Benson, 2005 WL 947291 at *1 (N.D. Ill., April 19, 2005)(describing the availability for purchase of the "Reliance Defense Package," and noting that "[t]he gist of the Reliance Defense Package is that the Sixteenth Amendment, permitting Congress to impose a federal income tax, supposedly was not ratified properly by several states.").

The Defendant, in Benson, who markets such packages, appears not to have been dissuaded by the rejection of the same Sixteenth Amendment argument, some fourteen (14) years ago, in a case involving criminal charges against him.  See United States v. Benson, 941 F.2d 598, 607 (7th Cir. 1995).  While the conviction against the Defendant, in Benson, was reversed on other grounds, his retrial resulted in his conviction for the willful failure to file tax returns, and for willful tax evasion.  See United States v. Benson, 67 F.3d 641 (7th Cir. 1995), modified on other grounds, 74 F.3d 152 (7th Cir. 1996).

- 4 -

should be commanded, by a Writ of Mandamus, to fill all of the alleged vacancies in the United States Senate created by the <u>ultra vires</u> acts of a powerless Federal Government; that legal tender, in the form of gold or silver, must be restored; that <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938), must be overturned; and that he be awarded $50,000,000.00 in damages.  The Plaintiff's contentions are as bizarre as they are meritless and, for sake of illustration, we address the fulcrum of the Plaintiff's contentions -- namely, that the State of Ohio was not admitted into the Union until 1953.

The Plaintiff theorizes, as others have before him, that irregularities in the ratification of Ohio as a State, have spawned a Federal Government that is powerless to govern.  The historical backdrop to the hypothesis was addressed by the Court, in <u>Bowman v. Government of the United States</u>, 920 F. Supp. 623, 624 n. 1 (E.D. Penn. 1995), which quoted John Switzer, "Yes Virginia, Ohio is a State," <u>Columbus Dispatch</u> (February 23, 1993), at p. 8B, by reference to a newspaper article which reported as follows:

> There has been friendly conjecture among history buffs over the years whether Ohio was the 17th or the 48th state admitted to the union. * * * When the statehood documents were dug out, it was found that there was no resolution signed by Thomas Jefferson declaring Ohio a state.   A

resolution was hurriedly drafted by the 83rd Congress, and President Dwight D. Eisenhower signed it on Aug. 7, 1953. It was retroactive to March 1, 1803.

\* \* \*

Amos Loveday, curator at the Ohio Historical Society, said that, although no statehood resolution was passed, most historians agree that Ohio was legally a state and that the 1953 congressional legislation was more or less a publicity stunt.

Back in the early days of the republic, the process for admitting states was still primitive. An enabling act had been passed and signed by Jefferson that spelled out what Ohio had to do to become a state. Ohio had to have a required population, elect a legislature and draft a constitution. The state complied with all that and submitted its constitution to the Congress for review. Approval was written in a bill, and Jefferson signed it. Ohio was legally a state, according to the process back then, Loveday said.

The process changed, however, with the admission of Indiana and Louisiana, the next states admitted after Ohio. With those states, Congress passed a separate resolution formally declaring them states, Loveday said.

Ultimately, the Court dismissed the hypothesis, and the Complaint that was based upon its validity, concluding that "it [could] not decide the question of the legality of the process by which Ohio was admitted to the Union, because doing so would entail an impermissible encroachment upon the authority of the political branches of the

Government." Id. at 625, citing Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803).

Nonetheless, the Court did express the view that the Congressional Resolution, which

was promulgated in 1953, and made retroactive to 1803, "appears to have been purely

ceremonial * * *; for instance, there is no indication that Congress saw it to be

necessary to correct the many problems that would have resulted had there been an

actual defect in the process of Ohio's admission to the Union." Id. at 625 n. 4.

According to our research, every Court to consider the Plaintiff's argument has

rejected the same as without merit, if not an outright frivolous contention.   See,

Knoblauch v. Com'r of Internal Revenue, 749 F.2d 200, 201-02 (5th Cir. 1984)(argu-

ment "totally without merit"), cert. denied, 474 U.S. 830 (1985); United States v.

Thomas, 788 F.2d 1250, 1253-54 (7th Cir. 1986), cert. denied, 479 U.S. 853 (1986);

Sisk v. Com'r of Internal Revenue, 791 F.2d 58, 60-61 (6th Cir. 1986)(argument

"totally without merit"); United States v. Stahl, 792 F.2d 1438, 1439-40 (9th Cir. 1986),

cert. denied, 479 U.S. 1036 (1987); United States v. Sitka, 845 F.2d 43, 46-47 (2nd Cir.

1988), cert. denied, 488 U.S. 827 (1988); Savers v. Baker, 861 F.2d 265 at *1 (4th Cir.

1988)[Table Decision]("This argument is manifestly frivolous."), cert. denied, 493

U.S. 830 (1989); United States v. Collins, 920 F.2d 619, 629-30 (10th Cir.

1990)("Argument reflecting such contemptuous disregard for established legal

- 7 -

authority has no place within this circuit."); <u>Raines v. Ashcroft</u>, 70 Fed.Appx. 300, 301 (6th Cir., July 9, 2003)(argument "lacks an arguable basis in law or fact" and is "frivolous")[Table Decision].

The Plaintiff draws nothing to our attention, in either fact or law, which discredits the long line of decisions which have categorically rejected such meritless attacks on the validity of the Sixteenth Amendment.  Indeed, during the course of his argument, the Plaintiff made plain that, while he could read his Complaint, and his prepared comments, he did not have the slightest intimation as to what his arguments meant.  He could not explain how he is an "Ambassador," apart from his self-designation and apparent assumption of that role, or how this Court could rule on his Complaint if this Court, as the rest of the Federal Government -- at least according to the Plaintiff -- is without the constitutional authority to act.

Finding the decisions of the Second, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits persuasive, we conclude that the Sixteenth Amendment is immune from collateral attack at this late date, and that the Secretary of State's certification of the adoption of that Amendment, in 1913, "is conclusive upon the courts."  <u>United States v. Stahl</u>, supra at 1439, citing <u>United States v. Thomas</u>, 788 F.2d 1250, 1253-54 (7th Cir. 1986); <u>United States v. Sitka</u>, supra at 47 ("The Sixteenth Amendment was

proposed by Congress and ratified by the states in accordance with procedures set out in Article V of the Constitution, and its ratification was then certified after careful scrutiny by a member of the executive branch acting pursuant to statutory duty," and "[t]he validity of that process and of the resulting constitutional amendment are no longer open questions."); Sisk v. Com'r of Internal Revenue, supra at 61 ("The Secretary of State certified that the Sixteenth Amendment had been ratified by the legislatures of the required number of states, and the Supreme Court has held his certification is binding on the courts."), citing Leser v. Garnett, 258 U.S. 130 (1922).

Shorn of its key constitutional claim, the Plaintiff's Complaint falls of its own weight, and he has abjectly failed to demonstrate any infirmity in the Sixteenth Amendment, in the current legal status of various United States Senators, in Erie Railroad Co. v. Tompkins, in the legitimacy of the Federal Government's legal tender, and he has further failed to substantiate, on any cognizable basis, his entitlement to damages against these Defendants.  As a result, the Defendants' Motions to Dismiss for failure to state a claim on which relief can be granted, see Rule 12(b)(6), Federal Rules of Civil Procedure, should be granted.[2]  Nevertheless, in the interests of

---

[2]While the Plaintiff's Complaint does not expressly identify any recognizable cause
(continued...)

completeness, we address several of the fatal deficiencies in the Plaintiff's Complaint, or in the manner in which it was served.

III.  Discussion

A.   Failure of Effective Service of Process.

The Plaintiff purports to have effected service of process upon each of twenty-two (22) States, and four (4) Amendments to the United States Constitution.  Process

---

[2](...continued)
of action against the Defendant States, he appears to claim that the States denied him due process of law, thereby implicating a claim under Title 42 U.S.C. §1983.  See Plaintiff's Complaint, Docket No. 1, at pp. 4-7.  However, under Section 1983, a State is not a "person" subject to suit.  See, Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999); Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997); State of Mo. ex rel. Missouri Highway and Transp. Com'n v. Cuffley, 112 F.3d 1332, 1335 n. 3 (8th Cir. 1997).  Accordingly, the Plaintiff has no viable cause of action against the Defendant States under Section 1983.

Moreover, in assessing the Plaintiff's Complaint, under Rule 12(b)(6), Federal Rules of Civil Procedure, "we accept the allegations in the complaint as true and draw reasonable inferences in favor of the nonmoving party, dismissing only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.'"  Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1062 (8th Cir. 2005), quoting Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004).  The Plaintiff has identified no other legal basis upon which to sue the Defendant States, and accordingly, he has failed to state a claim upon which relief can be granted.

was served by United States certified mail.[3]  See <u>Docket No. 65</u>, Claimant's Exhibit

A.  All but five (5) of the States have filed no Answer, or Motion to Dismiss, in

response to the Complaint, and counsel for the Defendants, who appeared at the time

of the Hearing, advised that those States, who chose not to respond to the Plaintiff's

Complaint, did so for reasons of insufficiency of service of process.  The Defendants

State of Minnesota, and State of Oregon, have made special appearances, but without

waiver of their respective insufficiency of process defenses.  See <u>Docket No. 53</u>.

Four States -- the Defendants Kansas, Michigan, New Jersey, and Ohio -- allow

service of process by mail, and have moved to dismiss the Plaintiff's Complaint on

substantive grounds.  See <u>Docket Nos. 6, 12, 19 and 24</u>.

     The Plaintiff offers no showing that he served his Complaint by means other

than certified mail, or that any of the Defendant States allows service of process to be

---

[3]We limit our discussion to the Plaintiff's attempted service of process upon the Defendant States for, overlooking the oxymoron of a constitutional Amendment being unconstitutional, we can conceive of no means by which an Amendment to the United States Constitution could be sued as a legal entity.   The Plaintiff does not purport to have sued the United States Government nor, as best as we can tell from the Record submitted, has the Plaintiff effectively served process upon the Attorney General, or upon the United States Attorney for the District of Minnesota.  See <u>Rule 4(i), Federal Rules of Civil Procedure</u>; cf., <u>Title 28 U.S.C. §2403(a)</u>.  As a consequence, the notion that the Plaintiff has sued a constitutional Amendment is rejected as frivolous, and not discussed further.

- 11 -

effected, upon a State Government, by the United States Mails.  Of course, "[i]f the party against whom a default judgment is sought has incurred no obligation under the Federal Rules of Civil Procedure to 'plead or otherwise defend' the action, the district court does not abuse its discretion in refusing to grant such relief."  Norsyn, Inc. v. Desai, 351 F.3d 825, 828 (8th Cir. 2003).  Here, the Plaintiff has failed to make any showing that effective service has been effected on any of the Defendant States that have not responded to his Complaint, and the representation of defense counsel, as an officer of this Court, that service was not effective, has been corroborated to the extent reflected in the laws of the States of Minnesota and Oregon.[4]

In Minnesota, the rule has long been recognized that service of process by mail is not effective unless the Defendant acknowledges service on the proper acknowledgment form.  In MW Ag, Inc. v. New Hampshire Ins. Co., 107 F.3d 644,

---

[4]The Defendant State of Oregon has also specially appeared in order to challenge the Plaintiff's request for the entry of a default as to that State.  As that Defendant notes, "[t]o be effective, Plaintiff was required to serve his Complaint on the State of Oregon 'by personal service upon the Attorney General or by leaving a copy of the summons and complaint at the Attorney General's office with a deputy, assistant or clerk.'"  Rule 4(j)(2), Federal Rules of Civil Procedure; Rule 7D(3)(c), Oregon Rules of Civil Procedure.  The Plaintiff has offered no authority as to the effectiveness of his service of process upon the State of Oregon by mail, and therefore, he has failed to carry his burden of demonstrating that he is entitled to the entry of a default as to that State.

- 12 -

647 (8th Cir. 1997)[applying Minnesota law], cert. denied, 522 U.S. 814 (1997), the

Plaintiff attempted to effect service of process by mail, but the Court rejected the

efficacy of such service, reasoning as follows:

> It is also undisputed the [plaintiff] did not provide [the
> defendant's purported agent] with the required acknow-
> ledgment form and did not receive an acknowledgment of
> service from [the defendant].  Thus, it is clear that service
> is ineffectual under Minnesota's rule.  This is true even in
> those cases where defendant never returned acknowledg-
> ment of service but had actual notice of the lawsuit and
> admitted that it received two summonses and complaints
> but made a corporate decision not to cooperate in service
> of process.   See Coons v. St. Paul Companies, 486
> N.W.2d 771 (Minn.Ct.App. 1992)[rev. denied (Minn., July
> 16, 1992)].    In these instances, plaintiff must secure
> personal service to obtain jurisdiction.  Thus, the service by
> mail on [the defendant's purported agent] was not sufficient
> service of process to commence a suit under Minnesota
> law.

Here, the very same may be said, as the Plaintiff does not purport to have any returned

acknowledgments of service, nor does he claim to have effected personal service of

process against any of the Defendant States.

The Motion for an entry of default is one that the Plaintiff must affirmatively

bear, and we find no cause, particularly in view of the frivolous claims he attempts to

pursue, to independently research the pertinent Rules of Procedure applicable in each

of the score of States that the Plaintiff has chosen to sue.  If service of process was properly effected on any of the Defendant States, then it is the burden of the Plaintiff to demonstrate that fact competently.  See Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003)("The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction."), citing Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992), and Newhard, Cook & Co. v. Inspired Life Centers, Inc., 895 F.2d 1226, 1228 (8th Cir. 1990).  Since he has failed to do so, we recommend the denial of the Plaintiff's Motion for the Entry of Default as to the Defendant States, for want of any showing that the service of process was legally sufficient.

Nor may default be granted as to the four (4) States who have filed Motions to Dismiss -- and who have conceded effective service of process -- as, under Rule 4(a)(4)(A), Federal Rules of Civil Procedure, a defendant is not obligated to file an Answer until ten (10) days after the Motion to Dismiss is denied, or postponed until a Trial on the merits.  See Milk Drivers, Dairy and Ice Cream Employees, Laundry and Dry Cleaning Drivers, Clerical and Allied Workers, Local Union No. 387 v. Roberts Dairy, 219 F.R.D. 151, 152 (S.D. Iowa 2003)("A party has ten days following disposition of a motion filed under Rule 12 of the Federal Rules of Civil Procedure to

file a responsive pleading.").  Since each of the responding four (4) Defendant States

has filed a Motion to Dismiss under Rule 12, they are not required to file a responsive

pleading until ten (10) days after a ruling which denies their respective Motion, and

therefore, at this juncture an entry of default is unwarranted.  In sum, the Plaintiff's

Motion for an entry of default should be denied as to each of the Defendant States.

B.    The Plaintiff's Lack of Standing.

Article III of the United States Constitution restricts Federal Courts to the

adjudication of actual "cases" and "controversies."  Neighborhood Transp. Network,

Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994)("Federal courts are courts of limited

jurisdiction and can only hear actual 'cases or controversies' as defined under Article

III of the Constitution."); Marine Equipment Management Co. v. United States, 4 F.3d

643, 646 (8th Cir. 1993), citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534,

541 (1986), citing, in turn, Marbury v. Madison, 5 U.S. [1 Cranch] 137 (1803).  As a

consequence, we have a primordial duty, in every case before us, to inquire whether

the vital prerequisite of subject matter jurisdiction has been satisfied.  See, Magee v.

Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998); Bradley v. American Postal Workers

Union, AFL-CIO, 962 F.2d 800, 802 n. 3 (8th Cir. 1992).  Here, certain of the

Defendant States challenge our subject matter jurisdiction over this case on the basis

- 15 -

of standing, which is "the threshold question in every federal case,"  and we find that

challenge convincing.  Tarsney v. O'Keefe, 225 F.3d 929, 934 (8th Cir. 2000), cert.

denied, 532 U.S. 924 (2001), quoting Warth v. Seldin, 422 U.S. 490, 498 (1975).

The familiar Supreme Court test for standing, under Article III's "case or

controversy" requirement, is satisfied at the pleading stage where a plaintiff shows that:

"(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b)

actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to

the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  Friends of the

Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., supra at 180-81, citing

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also, Tarsney v.

O'Keefe, supra at 934 ("A case or controversy exists only if a plaintiff 'personally has

suffered some actual or threatened injury as a result of the putatively illegal conduct of

the defendant."), quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99

(1979).

Here, we search the Plaintiff's Complaint in vain for any concrete and

particularized allegation that the Plaintiff has suffered any injury in fact.  Instead, the

Plaintiff vaguely and unintelligibly asserts that the Defendants somehow injured him on

January 28, 2004, January 30, 2004, April 18, 2005, April 29, 2005, and May 5, 2005.

See <u>Complaint</u>, at pages 38 through 46.  These allegations are plainly insufficient.  At

the time of the Hearing, we inquired, on several occasions, how the Plaintiff was

injured on the dates that he has identified, and he adamantly refused to respond to

those inquiries -- instead choosing to read from a prepared and characteristically

nonsensical statement.  "If," as here, "a plaintiff has not suffered an injury, there is no

standing and the court is without jurisdiction to consider the action."  <u>Tarsney v.</u>

<u>O'Keefe</u>, supra at 934.

    We are mindful that "[g]eneral factual allegations of injury resulting from a

defendant's conduct may suffice" at the pleadings stage to meet the injury in fact

requirement for constitutional standing, and that, "on a motion to dismiss we

'presum[e] that general allegations embrace those specific facts that are necessary to

support the claim.'"  <u>DeLorme v. United States</u>, 354 F.3d 810, 815 (8th Cir. 2004)

quoting <u>Lujan v. Defenders of Wildlife</u>, supra at 561.  Nevertheless, "it is not at all

clear in this case who suffered an injury, what the injury is, or who caused the injury

alleged by [the Plaintiff]."  <u>Id.</u> at 16.  Under such circumstances, the Plaintiff has not

shown an injury in fact, and he is without standing to litigate the claims he alleges, as

we are without subject matter jurisdiction to consider those claims, and the Motions

- 17 -

to Dismiss, which are predicated on the Plaintiff's lack of standing should be granted.[5]

Young America Corp. v. Affiliated Computer Services, Inc., --- F.3d ----, 2005 WL

2385779 at *2 (8th Cir., September 29, 2005)("If the plaintiff offers no factual

allegations, specific or general, demonstrating an injury in fact, the court should

dismiss the claim."), citing Burton v. Cent. Interstate Low-Level Radioactive Waste

Compact Com'n, 23 F.3d 208, 209 (8th Cir. 1994).  Id.

C.    The Defendant States' Eleventh Amendment Immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  For over a

century, the Amendment has been understood to stand for the proposition that a

non-consenting State is immune from Federal Court suits by its own citizens, as well

as by citizens of another State.  See, Kimel v. Florida Board of Regents, 528 U.S. 62,

------------------------------

[5]Ordinarily, if the deficiency in the Plaintiff's Complaint was simply one of poor draftsmanship, we would allow the Plaintiff a further opportunity to allege any actual injuries that he claims to have suffered.  Here, however, his Complaint is so devoid of anything other than frivolous allegations as to warrant the outright dismissal of his claims.

- 18 -

72 (2000); <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54 (1996); <u>Hans v.</u>

<u>Louisiana</u>, 134 U.S. 1, 13 (1890)(such suits "were not contemplated by the

Constitution when establishing the judicial power of the United States").  In effect, the

Eleventh Amendment immunizes from suit a "state agency or a state official * * * if

immunity will 'protect the state treasury from liability that would have had essentially

the same practical consequences as a judgment against the State itself.'"  <u>Hadley v.</u>

<u>North Arkansas Community Technical College</u>, 76 F.3d 1437, 1438 (8th Cir. 1996),

quoting <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 123 n. 34 (1984);

see also, <u>Regents of the University of California v. Doe</u>, 519 U.S. 425 (1997); <u>Edelman</u>

<u>v. Jordan</u>, 415 U.S. 651 (1974); <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S.

459, 464 (1945).

Over the years, the Supreme Court has fashioned a patchwork of exceptions to

the Eleventh Amendment's limitation on Federal Court jurisdiction, as that doctrine

was initially expressed in <u>Hans</u>.  Under the doctrine of <u>Ex parte Young</u>, 209 U.S. 123

(1908), a Federal Court retains jurisdiction, notwithstanding the Eleventh Amend-ment,

to direct State officials to conform their practices to the requirements of Federal law,

even though such an injunction might have collateral effects upon a State Treasury.[6]

See, Edelman v. Jordan, supra at 667-68; Milliken v. Bradley, 433 U.S. 267, 289

(1977).   But such an exercise of jurisdiction does not extend to the award of

retroactive relief which requires the payment of funds from the State Treasury.  See,

Edelman v. Jordan, supra at 667-68.  Thus, the Eleventh Amendment bars actions, in

Federal Court, which seek monetary damages from individual State Officers, in their

official capacities, as well as State Agencies, because such lawsuits are essentially "for

the recovery of money from the state."   Ford Motor Co. v. Department of the

Treasury, supra 464; see also, Will v. Michigan Dep't of State Police, 491 U.S. 58, 71

(1989) ("[N]either a State nor its officials acting in their official capacities are 'persons

under §1983'" when sued for damages.).

     Here, the Plaintiff does not seek injunctive relief as to the Defendant States.

While he does request injunctive relief, those requests are directed against the

President of the United States, who is not a party to this action.  See Complaint,

Docket No. 1, at p. 8.  In addition, the Plaintiff does not seek declaratory relief as to

---

     [6]In Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 126 (1984), the
Court held that pendent State law claims, for even prospective injunctive relief, were
barred by the Eleventh Amendment and, to that extent, the doctrine in Ex parte Young
was substantially narrowed.

the Defendant States, but asks that the Court declare certain Amendments to the United States Constitution unconstitutional, and all Acts of Congress, after September 24, 1862, to be moot; however, those are not matters within the authority of any of the Defendant States.[7]  See Complaint, Docket No. 1, at pp. 7-12; see also, Dakota, Minnesota & Eastern Railroad Corp. v. South Dakota, 362 F.3d 512, 516 (8th Cir. 2004)("Under Ex Parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment bars damage relief against the States, but it does not prohibit 'certain suits seeking declaratory and injunctive relief against state officers.'"), quoting Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 269 (1997).   Nor may the Plaintiff recover $50,000,000.00 in damages against any State, or grouping of States, under the Eleventh Amendment.  See In re SDDS, Inc., 97 F.3d 1030, 1035 (8th Cir. 1996).[8]

---

[7]Notably, the Plaintiff does not name any State actors as Defendants, either in the individual or official capacities, nor does he name any Federal actors.

[8]Notwithstanding the pendency of these Motions to Dismiss, the Plaintiff has not so much as intimated that any of the Defendant States has consented to his suit, or has waived the immunity from suit that arises from the Eleventh Amendment, and we independently find no evidence to support either consent or waiver.

- 21 -

Therefore, we also recommend that the Plaintiff's Complaint against the Defendant States be dismissed for want of subject matter jurisdiction under the Eleventh Amendment to the United States Constitution.[9]

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Plaintiff's Motions for Entry of Default [Docket Nos. 48 and 59] be denied.

2.     That the Plaintiff's Motions for a Hearing [Docket Nos. 28 and 44] be denied as moot, as a Hearing was conducted on September 15, 2005.

---

[9]Since we conclude that we are without subject matter jurisdiction over the Plaintiff's Complaint, due to the Plaintiff's absence of standing, and because the Defendant States are immune from suit, we recommend, <u>sua</u> <u>sponte</u>, the dismissal of the Complaint with prejudice, as to all of the Defendants.  See <u>Williams v. Rogers</u>, 449 F.2d 513, 517-18 (8th Cir. 1971)("The principles that the Federal courts are courts of limited jurisdiction, possessing only the power that Congress expressly has conferred upon them by statute, Locherty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943), that parties cannot waive lack of subject matter jurisdiction whether by express consent or by conduct, Chicago, Burlington & Quincy Railway Co. v. Willard, 220 U.S. 413, 421, 31 S.Ct. 450, 55 L.Ed. 521 (1911); and that where jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte, Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908), are all well established and, of course, applicable here."); see also, <u>Rule 12(h)(3), Federal Rules of Civil Procedure</u> ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

- 22 -

3.     That the Motions to Dismiss of the Defendants State of Kansas [Docket No. 6], State of Michigan [Docket No. 12], State of New Jersey [Docket No. 19], State of Ohio [Docket No. 24], and State of Oregon [Docket No. 36], be granted, and that the Plaintiff's Complaint be dismissed with prejudice.

4.     That the Plaintiff's Complaint be dismissed as to all of the Defendants, as this Court is without subject matter jurisdiction to consider the claims raised in that Complaint.

Dated:  October 6, 2005                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 24, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply

with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 24, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.